No. 86-495

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ROBERT A. HILLSTROM and PATRICIA
A. HILLSTROM,

        Plaintiffs and Respondents,

   -vs-

STEVEN J. O'NEILL,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
            In and for the County of Gallatin,
            The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Peter M. Meloy, Helena, Montana

    For Respondent:

        J. Robert Planalp, Bozeman, Montana

---

Submitted on Briefs: March 12, 1987

Decided: April 21, 1987

Filed: APR 21 1987

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Steven O'Neil appeals the October 29, 1985, order of the Eighteenth Judicial District Court granting summary judgment in favor of plaintiffs Robert and Patricia Hillstrom. We affirm.

This case involves breach of a buy-sell contract. Robert and Patricia Hillstrom were the sellers and Steven O'Neil the buyer. Hillstroms desired to sell a ten acre tract of land located in Gallatin County, Montana. O'Neil sought land in the area for development purposes. On June 2, 1983, O'Neil executed a document entitled "Earnest Money Receipt and Agreement to Sell and Purchase". Hillstroms signed the agreement on June 9, 1983.

The buy-sell agreement provided for a purchase price of $225,000 with $6,000 in earnest money due upon execution of the contract, $69,000 due at the time of closing, assumption of an $18,000 underlying contract, and the balance of $132,000 due in monthly installments with interest accruing from the date of closing at 10%. The contract further provided for two partial releases. Upon Hillstroms' receipt of $100,000 of principal from O'Neil, Hillstroms would "deed property east of road and west of river" to O'Neil. Upon receipt of $50,000 of the principal amount, Hillstroms were required to deed property west of the road to O'Neil. O'Neil had choice of first release and was required to pay for all costs of releases and surveys.

The buy-sell contract was drawn by O'Neil's real estate agent and contained wording in large print, "THIS IS A LEGALLY BINDING CONTRACT, IF NOT UNDERSTOOD, SEEK COMPETENT ADVICE". Closing was set for August 1, 1983. O'Neil wired a telegram to Hillstroms stating, "Your acceptance on June 9,

2

1983, is considered by me to create a valid and binding agreement."

Prior to closing O'Neil became concerned about securing the necessary approval of county authorities regarding his subdivision plans. The closing date was extended to August 4, 1983, by agreement of the parties. On August 4, 1983, O'Neil refused to close. O'Neil proposed that closing be postponed until a survey of the tract could be performed. O'Neil also requested documents showing consent by Corcoran and Spain to O'Neil's assumption of the contract, and transferring all appurtenant water rights to O'Neil.

Hillstroms provided O'Neil with Corcoran and Spain's consent to assignment but refused to delay closing to allow survey as requested by O'Neil. The parties were unable to come to terms and Hillstroms filed an action for specific performance August 19, 1983. Following discovery, both parties filed motions for summary judgment. Hearing was held and the District Court entered its order October 30, 1985, granting summary judgment in favor of Hillstroms. O'Neil appeals and raises the following issues:

1) Whether the District Court erred in granting summary judgment?

2) Whether the District Court erred in granting specific performance?

3) Whether rescission was proper for failure of Hillstroms to permit surveying to be completed?

4) Whether there was a mutual mistake of fact as to subdivisibility of the land covered by the contract?

5) Whether the District Court erred in granting specific performance of the buy-sell agreement without reference to the proposed closing agreement?

O'Neil contends there were genuine issues of material fact precluding summary judgment in this case. Pursuant to

Rule 56(c), Mont.R.Civ.P., summary judgment is proper where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing summary judgment. Abell v. Travelers Insurance Co. (Mont. 1983), 663 P.2d 335, 40 St.Rep. 738. A review of the record in this case reveals no genuine issue of material fact and supports the summary judgment in favor of Hillstroms.

O'Neil next contends that specific performance should not have been granted because Hillstroms had not fully complied with their obligations under the contract. Section 27-1-416, MCA, requires a party to perform all material conditions precedent before specific performance may be enforced. O'Neil claims Hillstroms failed to satisfy 3 conditions prior to closing: 1) failure to allow O'Neil to perform a survey; 2) failure to secure a consent to assignment from Corcoran and Spain; 3) failure to provide title insurance.

As noted by the District Court, none of these provisions are listed in the contract as conditions precedent. Of these 3 items only title insurance is mentioned but there is no requirement that it be due upon closing. In fact, it was O'Neil's real estate agent who was involved in securing title insurance and it was completed July 29, 1983, and delivered to O'Neil August 5, 1983. We find no support for O'Neil's contention that failure to have title insurance in hand on August 4, 1983, excused his performance nor were there any conditions precedent which Hillstroms failed to perform.

Section 27-1-411(4), MCA, provides that specific performance may be compelled when the parties to a contract have expressly agreed in writing that specific performance shall be an available remedy. The buy-sell agreement signed

4

by the parties expressly provided for a remedy of specific performance and Hillstroms were entitled to pursue this remedy.

The third issue is whether O'Neil was entitled to rescission due to Hillstroms' refusal to permit survey prior to closing. O'Neil asserts that subdivisibility of the tract is a contractual condition implied by the partial release clause of the buy-sell agreement. The release clause allows O'Neil to acquire deed to a portion of the land upon payment of a percentage of the entire principal owing to Hillstroms. However, before partial release can occur, state law requires the land to be surveyed, platted, and approved for subdivision.

This issue is merely a rephrasing of O'Neil's previous argument that survey was a condition precedent to closing. There is no language in the contract indicating completion of a survey to be a condition precedent. We find no support in the record for O'Neil's contention that closing should have been delayed to permit a survey to be accomplished.

The fourth issue is whether there was a mutual mistake of fact as to subdivisibility of the land covered by the contract. The District Court found O'Neil's claim of mistake of fact to be meritless because O'Neil has never attempted to have the property subdivided. We agree. Mistake of fact as found in § 28-2-409(1), MCA, requires, "Unconscious ignorance or forgetfulness of a fact, past or present, material to the contract." To succeed on a mistake of fact defense, O'Neil would have to show that the land cannot be subdivided. O'Neil admits he has not made such a showing.

O'Neil contends that mistake of fact is applicable because neither party understood the extent and complexity of the regulations concerning subdivision approval. While Hillstroms contend O'Neil raises this argument for the first

5

time on appeal, we find it was presented in O'Neil's supplemental brief filed with the District Court. At any rate, O'Neil's argument fails on its merits.

O'Neil was under the duty to execute the buy-sell agreement with the prudence and care of a reasonable and cautious businessman. Quinn v. Briggs (1977), 172 Mont. 468, 565 P.2d 297. The record shows O'Neil is an experienced businessman who has operated 6 silver companies including the largest silver recycling company in the country, purchased and sold numerous homes, and he is the sole stockholder of a corporation which owns a ranch in Gallatin County adjacent to the land under dispute in this case.

O'Neil's deposition testimony reveals that he was aware of the obstacles to subdivision approval because he was experiencing difficulties obtaining subdivision approval for the ranch at the time he negotiated the contract with Hillstroms. He cannot now claim that he entered the buy-sell agreement intending to develop the land yet was unaware of the requirements of subdivision approval.

The final issue is whether the District Court erred in granting specific performance of the buy-sell agreement without reference to the proposed closing agreement. We find no error. The proposed closing agreement was never signed by O'Neil and is not enforceable without his consent. Section 28-2-102, MCA. The District Court order granted specific performance of the buy-sell agreement and does not mention the proposed closing agreement.

O'Neil argues both sides on this issue, stating that he refused to sign the closing contract yet he is entitled to the protections of a closing contract. In this instance, we find the essential terms of the parties' agreement are contained in the buy-sell agreement and it is specifically enforceable. This Court has previously upheld specific

6

enforcement of buy-sell agreements.  See Chadwick v. Giberson (Mont. 1980), 618 P.2d 1213, 37 St.Rep. 1723; Halcro v. Moon, (Mont. 1987), ___ P.2d ___, 44 St.Rep. 504.

The District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

7